**FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AUGUSTINO SMITH, : | |
| : | |
| Petitioner, : | Civ. No. 12-2932 (DRD) |
| : | |
| v. : | **OPINION** |
| : | |
| WARDEN OF ESSEX COUNTY JAIL, : | |
| UNITED STATES ATTORNEY FOR THE : | |
| DISTRICT OF NEW JERSEY, UNITED : | |
| STATES MARSHAL FOR THE DISTRICT: | |
| OF NEW JERSEY, ATTORNEY : | |
| GENERAL FOR THE STATE OF NEW : | |
| JERSEY, and/or whomever may have the : | |
| custody of the body of AUGUSTINO : | |
| SMITH, : | |
| : | |
| Respondent. : | |

Robert J. Olejar, Esq.
Olejar & Olejar, L.L.P.
11 Morey Lane
Randolph, NJ 07869-4628
   *Attorney for Petitioner*

Keith E. Hoffman, Esq.
Senior Assistant Prosecutor
Passaic County Prosecutor's Office
Administration Building, 7th Floor
401 Grand Street
Paterson, New Jersey 07505
   *Attorney for Passaic County*

Paul J. Fishman
United States Attorney
By:   Peter G. O'Malley
      Assistant U.S. Attorney

970 Broad Street, Suite 700
Newark, New Jersey 07102
    *Attorney for United States Attorney (N.J.)*
    *United States Marshal (N.J.)*

**Debevoise, Senior District Judge**

    Petitioner, Augustino Smith, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2554, 28 U.S.C. § 2241(c), or both, and Fed. R. Civ. P. 81(a)(4). He alleges that he is unlawfully imprisoned, restrained of liberty and that he is in the custody of the United States Marshal for the District of New Jersey, the United States Attorney for the District of New Jersey, the Attorney General for the State of New Jersey, and the Warden of the Essex County Jail in violation of the Constitution or treaties of the United States.

    It appears on the basis of the undisputed facts that upon his 1997 plea of guilty to state charges, Petitioner was deprived of his federal constitutional rights under the law as now interpreted by the Court of Appeals for the Third Circuit, <u>Orocio v. United States</u>, 645 F. 3d 630 (3d Cir. 204), and that his present confinement results from that violation. Yet it also appears that Petitioner cannot obtain relief in this proceeding.

## I. <u>Background</u>

    Petitioner was born in Jamaica on October 6, 1978 and brought to the United States by his mother when he was eight years of age, settling in Paterson, New Jersey. He attended Paterson public schools until eleventh grade, after which he was employed as a certified welder and automobile mechanic.

    Petitioner is unmarried but has four minor children. All of Petitioner's family, including his mother, common law wife and children live mainly in the Paterson area. Having been

brought to the United States at age eight, Petitioner has no relationship of any kind with anyone in Jamaica.

On October 6, 1997, Petitioner pleaded guilty to one count of possession of a controlled dangerous substance with intent to distribute and two counts of robbery. The plea was before the Honorable Joseph A. Falcone, sitting in New Jersey Superior Court, Law Division, Criminal Part, Passaic County. At the time Petitioner was nineteen years of age.

It is this plea that is the focus of the petition. At the time of the plea Petitioner had no criminal record. Petitioner's account of the plea proceedings is substantiated by, among other things, a transcript of the plea hearing. Petitioner, who initially asserted his innocence, as he continues to do, was assigned Assistant Public Defender, Margaret Kean, Esq. According to Petitioner she advised him to plead guilty to reduce his exposure to incarceration, which could have been up to twenty years. Petitioner further asserts that Ms. Kean told him that if he pleaded guilty, he would go home to his family in four years. At the plea hearing Judge Falcone told Petitioner that the worst he could do was twelve years with a four years' parole ineligibility. At no time during the pre-hearing events or at the plea hearing did Ms. Kean or Judge Falcone, or anyone else mention to Petitioner the immigration consequences of his guilty plea. These consequences, of course, were extraordinary - the likely life-time separation from his family and friends and permanent exile to a country with which he had no familiarity. At the time Petitioner had one child and one on the way. He states that had he realized these consequences, he would never have pleaded guilty and would have gone to trial. A brief later filed on behalf of Petitioner in the state court on a motion to withdraw the plea argues forcefully that defects in the state's case against Petitioner might well have resulted in a judgment of acquittal at a new trial. It is

quite apparent that failure to advise Petitioner of the immigration consequences of his plea would not have passed muster under the later Supreme Court decision in Padilla v. Kentucky, 559 U.S. ___, 130 S. Ct. 1473 (2010).

On December 10, 1997, Judge Falcone sentenced Petitioner on the robbery counts and ordered him "committed to the custody of the Department of Corrections for a term of twelve (12) years, during which not eligible for parole for a period of four (4) years . . ." In the same appearance before Judge Falcone, Petitioner was also sentenced on the CDS count and "committed to the custody of the Department of Corrections for a term of five (5) years, during which not eligible for parole for a period of eighteen (18) months. . ." The sentences were to run concurrently. Petitioner was, in fact, incarcerated in accordance with the above sentences.

On September 21, 1999, an Immigration Judge ordered Petitioner ". . .removed from the United States to Jamaica", in the action captioned "In the Matter of Smith, Augustino Samora," Case No. A41-362-524.

There is a dispute between Petitioner and Passaic County as to whether Petitioner was released from state custody on parole. It is Petitioner's contention that "[a]fter serving four years' incarceration Petitioner was released on parole sometime prior to January 26, 2002 to the custody of the United States Immigration and Naturalization Service (INS) (Pet. pg. 3). Passaic County states flatly "Mr. Smith was never released 'on parole'" (Passaic County Brief p. 2). The County is clearly in error. The New Jersey State Parole Board has provided Petitioner's counsel with documentation that establishes that Petitioner was paroled by the State of New Jersey on the condition of deportation with instructions that if he illegally reentered the country he would be violating the terms of his parole. As will be discussed in more detail below, Petitioner did in fact

violate his parole by illegally reentering the United States, thus exposing himself to the Parole Board's issuance of a detainer against him.

On January 26, 2002 Petitioner was deported from the United States to Jamaica by officers of the INS. On November 7, 2010 Petitioner was arrested for unlawful reentry into the United States. An indictment filed June 29, 2009 charges Petitioner with unlawful reentry into the United States in violation of 8 U.S.C. §§ 1326(a) and (b)(2), after having been deported and removed from the United State on January 26, 2002, as a consequence of his guilty plea to aggravated felonies under New Jersey law on October 6, 1997.

Petitioner was arraigned before Judge Susan D. Wigenton on November 10, 2010. On November 8, 2010 he had been remanded to the United States Marshal's Service ("USMS") by then United States Magistrate Judge Michael A. Shipp. The detention order gives Petitioner the "right for bail application at a later time." Petitioner is housed by the USMS at the Essex County Jail in New Jersey pursuant to an Intergovernmental Agreement. At the arraignment Judge Wigenton ordered that Petitioner remain in custody. He has been in custody awaiting trial until the present.

## II. Petitioner's Applications for Relief

On January 26, 2011, Petitioner filed a Motion for Post-Conviction Relief ["PCR"] in New Jersey Superior Court. The motion was brought by Paul E. Fernandez, Esq., an attorney retained by his family solely for the purpose of allowing him to withdraw the above guilty plea(s) in that court on ground of ineffective assistance of counsel, pursuant to the U.S. Supreme Court's decision in Padilla, which had been published on March 31, 2010. Specifically, Petitioner claimed that his defense counsel at the time did not advise him of the immigration consequences

5

before entering his guilty plea, and that had he known he would be deported, he would not have pleaded guilty in the State Court. Petitioner's motion for PCR was originally assigned to Judge Falcone, who was still a Judge of the Superior Court of New Jersey, Passaic County. But, before the return date of the motion, Judge Falcone retired from the bench. Petitioner's motion for PCR was then assigned to the Honorable Joseph A. Portelli, J.S.C. When the Essex County Sheriff failed to transport Petitioner to the Passaic County Courthouse on the original return date of his motion, June 21, 2011, Judge Portelli set July 27, 2011 as the new return date. On June 29, 2011 in U.S. v. Orocio, 645 F. 3d 630 (3rd Cir. 2011) the Court of Appeals for the Third Circuit had held that Padilla defines ineffectiveness of counsel as both giving misadvice about immigration consequences and failure to provide any advice at all on the subject and is to be applied retroactively.

On July 26, 2011, the day before the new return date of Petitioner's motion, the New Jersey Supreme Court issued a stay of all motions for post-conviction relief brought under Padilla or the New Jersey Court's decision in State v. Nunez-Valdez, 200 N.J. 129 (2009), until it decided two appeals which raised the issue of whether Padilla and Nunez-Valdez should be applied retroactively. However, the order gave New Jersey state trial and appellate courts the authority to lift the stay when necessary to avoid irreparable harm.

On Friday, April 27, 2012, the Honorable Miguel de la Carrera, J.S.C., denied Petitioner's Motion for Post-Conviction Relief without an evidentiary hearing, following the holding of the New Jersey Supreme Court in State v. Gaitan, 209 N.J. 339 (2012), that Padilla is not to be applied retroactively by New Jersey state courts. On April 30, 2012, to resolve the conflict with the decision in Orocio, the U.S. Supreme Court granted *certiorari* in Chaidez v. U.S., 655 F. 3d

6

684 (7th Cir. 2011), which held Padilla not retroactive.

### III. Discussion

A. State Law Development: At this juncture it would be instructive to trace the development of New Jersey law upon the subject of defense counsel's failure to advise a non-citizen of the immigration effect of a plea of guilty.

The issue arose in State v. Nunez-Valdez, 200 N.J. 129 (2009). Defendant pleaded guilty to fourth degree sexual contact in exchange for a state recommendation of a probationary sentence. Based on the plea defendant was deported. In his PCR petition defendant alleged that his attorney misinformed him, informing him that the plea would have no immigration consequences. The trial court agreed, permitted withdrawal of the plea and ordered a new trial. The Appellate Division reversed.

In turn the New Jersey Supreme Court reversed the Appellate Division, finding that the trial court had sufficient evidence to find that defendant had been misinformed about the immigration consequences of a plea of guilty and that he would not have pleaded guilty if he had received accurate information.

The Court approved of the Strickland two part test for the ineffectiveness of counsel and noted that the issue whether to advise of the immigration consequences of a guilty plea constituted ineffective assistance of counsel was then before the United States Supreme Court in the then pending Padilla case. The Court also stated that whether the immigration effect was "direct" or "collateral" to the plea was not relevant to its decision and to avoid entanglement with federal law implicating those concepts it would decide the case on state constitutional grounds. It held that Strickland had been adopted as state constitutional law and required reversal of the

Appellate Division decision adverse to defendant.

There followed <u>State v. Gaitan</u> 209 N.J. 339 (2012), which figures so prominently in the present case. It was a consolidated opinion in <u>State v. Gaitan</u> and <u>State v. Goulbourne</u>. Gaitan pleaded guilty to a drug offense; he claimed his attorney failed to warn him of the immigration consequences of the plea; and he was ordered deported. At a PCR proceeding the court denied his petition. The Appellate Division reversed.

Goulbourne pleaded guilty to a drug charge and was informed only that he <u>might</u> be deported as a result. In his PCR petition he challenged the failure to advise him that he <u>would</u> be deported. The trial court granted his petition and the Appellate Division affirmed.

The Supreme Court's review of these two cases covered much ground. It noted that <u>Nunez-Valdez</u> involved giving wrong advice, risking an ineffective assistance of counsel claim, and that such a ruling was in no way revolutionary or new. It further noted that whether immigration consequences were penal or collateral was irrelevant, and that the result in <u>Nunez-Valdez</u> was based on state constitutional principles.

In <u>Gaitan</u> the New Jersey Supreme Court acknowledged the effect that the recently decided case of <u>Padilla</u> had upon a <u>Strickland</u> analysis. Padilla rejected the application of the direct and collateral consequences criteria to define reasonable professional assistance in a <u>Strickland</u> analysis, as deportation was a particularly severe penalty and intimately related to the criminal process. The New Jersey Supreme Court also acknowledged that <u>Padilla</u> recognized no distinction between providing affirmative misrepresentations concerning deportation and providing no advice at all.

<u>Gaitan</u> then returned to New Jersey law on the subject. It noted that prior to <u>Nunez-</u>

Valdez the New Jersey Supreme Court took the position that a defendant's plea was not vulnerable because deportation consequences were not explained to a defendant - these were collateral, not penal consequences. However, in Nunez-Valdez, the Court held that the giving of wrong advice constituted ineffective assistance of counsel under state law. This constituted a new rule.

The New Jersey Supreme Court then addressed the question of Padilla's retroactive effect under federal law, applying the principles of Teague v. Lane, 489 U.S. 288 (1989). If Padilla did not announce a "new rule," Gaitan and Goulbourne would be entitled to invoke the protection of Padilla even though their convictions had achieved finality prior to Padilla. If, on the other hand, Padilla announced a "new rule" then the two defendants would have to demonstrate that they fell within one of the two narrow exceptions to the Teague rule (which they do not).

In Gaitan the Court recognized that in Orocio, the Court of Appeals for the Third Circuit addressed the retroactivity issue and had held that Padilla did constitute a new rule and was to be applied retroactively in collateral proceedings. Gaitan summarized the effect of Padilla as follows:

> "Padilla unequivocally establishes that it is now mandatory to advise on the subject [risk of immigration consequences] as part of providing constitutionally effective counsel to a pleading non citizen criminal defendant. Specific counseling must occur when the risk of deportation arises as a result of a guilty plea."

209 N.J. at 371.

> In sum based on our review of the pertinent standards and persuasive authority available we hold that Padilla's now constitutional pronouncement is not entitled to retroactive application on collateral review based on federal retroactivity standards.

9

Id. at 372.

Thus Gaitan denied the petitioners federal relief not because it held that Padilla distinguishes between affirmative misrepresentations of immigration law and no advice on the subject at all; rather it held that under federal law Padilla, while applicable both to misrepresentations and total failure to give advice, is simply not available in collateral proceedings.

Gaitan's "wrong advice" versus "no advice" comments were not made in the context of a federal claim; they were made in the context of deciding the retroactivity of the state law constitutional claim as originally defined under Nunez-Valdez.

There is clear disagreement between the New Jersey Supreme Court and the Court of Appeals on the retroactivity question. Gaitan held that Padilla is not retroactive in collateral proceedings. In Orocio, Orocio accepted a plea agreement to a drug offense. His attorney did not inform him of the immigration consequences, i.e., mandatory removal. Orocio completed his sentence and was then placed in removal proceedings. He filed a petition for a writ of coram nobis in the District Court, which dismissed the petition. The Court of Appeals vacated the judgment of the district court and remanded, holding that the district court had jurisdiction, that Padilla had retroactive application and that the case should be returned to the district court to be decided within the framework of Padilla.

Presently before the United States Supreme Court, and already argued, is the appeal in Chaidez v. United States, 655 F. 3d 684 (7th Cir. 2011), which unlike Orocio, held that Padilla announced a new rule that does not fall within either of Teague's exceptions and cannot be applied in a collateral appeal. Chaidez pleaded guilty to two counts of mail fraud. Removal

proceedings were initiated against her, after which she filed a motion for a writ of coram nobis in her criminal case, alleging ineffective assistance of counsel claiming that her defense attorney failed to inform her that a guilty plea could lead to removal. The Supreme Court's decision in the Chaidez case is likely to be dispositive of the instant case.

    B. The Constitutional Merits: No Respondent has challenged the merits of Petitioner's constitutional claim, namely, that at the time of his state court plea Petitioner was denied the effective assistance of counsel. Under Strickland v. Washington, 466 U.S. 668 (1984) a petitioner must establish two elements before he is entitled to vacation of a conviction for ineffective assistance of counsel. He must first prove that defense counsel was ineffective and he then must establish resultant prejudice. The undisputed facts in this case establish that Petitioner's attorney was ineffective. In Padilla the Supreme Court ruled that the first element is satisfied when at a plea hearing defense counsel fails to advise the defendant of the immigration consequences of a guilty plea. Here there can be no question but that Petitioner's counsel failed to advise him that as a result of his plea under the immigration laws he faced deportation.

    Applying the Court of Appeals 2011 decision in Orocio a court could only find that Petitioner suffered prejudice by reason of his counsel's ineffectiveness. It is unnecessary to consider the arguments advanced by his counsel and by counsel who represented him on his state court motion to withdraw his plea, that the state's evidence was weak and that a trial would likely result in an acquittal.

    Orocio sets the standard for prejudice, that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Orocio at 643. The issue is whether the defendant would not have pleaded guilty and would have gone

to trial, whether the decision to reject the plea bargain would have been rational under the circumstances.

In Orocio a 27 year old defendant who was a lawful resident of the United States faced deportation for conviction of a drug offense. The court found the decision to reject a guilty plea, which resulted in a sentence of time served plus two years' supervised release, and accept the risk of a ten-year minimum sentence and conviction after trial, just for the possibility of avoiding deportation, to be "rational under the circumstances". Id. at 645. The Court noted a right to remain in the United States could be more important than any potential jail sentence. Orocio was only 27 years old at the time of his plea. The Court concluded that "he rationally could have been more concerned about a near-certainty of multiple decades of banishment from the United States than the possibility of a single decade in prison." Id. at 645.

The circumstances in the instant case are even more compelling than in Orocio. At the time of the plea Petitioner was nineteen years of age. He had been brought to the United States at age eight years and lived here legally from that time forward. He attended the Paterson, New Jersey public schools and became employed in that area after leaving school. At the time of the plea he had one child and another on the way. His mother is living in the same area, as are all his friends. He has no familiarity or associations with Jamaica. Lifetime exile there would be a disaster that he rationally would have wished to avoid. It is highly unlikely that he would have voluntarily accepted lifetime banishment by pleading guilty had he been informed of the consequences.

In this Circuit under Pinho v. Gonzalez, 432 F. 3d 193 (3d Cir. 2005), where an alien's prior conviction has been vacated on the basis of a defect in the criminal proceedings, there is no

longer a conviction for immigration purposes. Thus if Petitioner's state conviction were set aside, there would no longer be a basis for the criminal charges now pending against him. It is most likely that the indictment for illegal entry would be dismissed and Petitioner released from custody.

    C. <u>Issuance of the Writ</u>: Section 2254 of 28 United States Code provides that "... a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Petitioner strives valiantly to establish that he is in the custody of Passaic County relying upon his conviction and sentencing in that County, incarceration for the crimes to which he pleaded guilty and lengthy parole term. The County denies that Petitioner was ever placed on parole and that it no longer has any involvement with him.

    Petitioner has successfully rebutted the County's position and has established that he was paroled into the custody of the INS for deportation proceedings. Petitioner's parole status has neither been served nor revoked. However, the County has not filed a detainer against Petitioner nor indicated any intention of doing so.[1]

    Custody of Petitioner is now in the hands of the United States Marshals. He was arrested

---

[1] The County agrees that Petitioner has exhausted his state remedies but advances the time limitation of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as an additional bar to the petition. Under the AEDPA the one year time limitation begins to run <u>from</u> the date of "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2244(d)(2)(A)(i). Petitioner contends that <u>Padilla</u>, on which he bases his claim, was such a rule. It was decided on March 31, 2010. Petitioner's first state PCR motion was filed on January 26, 2011. <u>Orocio</u>, which held that <u>Padilla</u> was to be applied retroactively, was decided on June 29, 2011. The petition was filed on May 16, 2012, less than a year after <u>Orocio</u>.

on the charge of illegal entry into the United States, brought before a federal court and turned over to the custody of the United States Marshal by Magistrate Judge Shipp to be held for trial by Judge Wigenton. He has been housed at the Essex County Jail pursuant to an Intergovernmental Agreement. Thus neither Passaic County nor any other of the remaining Respondents other than the United States Marshal has custody of Petitioner. None may be subject to a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Nor is the United States Marshal subject to a writ pursuant to 28 U.S.C. § 2241(c)(3). Petitioner is in custody for his return to the United States following his deporation that resulted from his past conviction and is in jail awaiting trial.

Until the Supreme Court decides <u>Chaidez</u> it is premature to decide whether Petitioner is in custody of the United States in violation of the Constitution or laws of the United States as required by 28 U.S.C. § 2241(c)(3).

### IV. Conclusion

Although Petitoner has established that his counsel's performance was ineffective under the <u>Strickland</u> and <u>Padilla</u> principles when he pleaded guilty to state court criminal charges in 1997 and as a result was deported, he cannot receive relief in his present petition, which must be dismissed.

_____
DICKINSON R. DEBEVOISE
U.S.S.D.J.

November 5, 2012

14